IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.: 2:24cr287-TES-JTA-2 |
| | ) | |
| FRANCISCO LOPEZ | ) | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court is the United States Magistrate Judge's Report and Recommendation ("R&R") (Doc. 232) regarding Defendant Francisco Lopez's Motion to Suppress (Doc. 132). Defendant's Motion has been fully briefed, and following a hearing, the Magistrate Judge recommends that Defendant's Motion be denied.[1] (Doc. 136); (Doc. 145); (Doc. 232, p. 11). Defendant subsequently filed an Objection (Doc. 249), so the Court must make a de novo determination of the portions of the R&R to which Defendant objected. 28 U.S.C. § 636(b)(1)(C).

In his Motion, Defendant requests the Court to suppress six kilograms of powder cocaine discovered inside two car batteries from the bed of his truck on June 10, 2024. (Doc. 132, pp. 1, 5). While the facts are more fully presented in the Magistrate Judge's R&R, Defendant challenges the search of his truck parked at 3835 Edgar D. Nixon Avenue in Montgomery, Alabama. (*Id.*); (Doc. 249, p. 1); *see also* (Doc. 232, pp. 2–5). After

---

[1] During the hearing, the Magistrate Judge also ordered supplemental briefing by both the Government and Defendant. (Doc. 173, Hearing Tr., p. 77:6–22); (Doc. 161); (Doc. 170).

Defendant arrived at 3835 Edgar D. Nixon Avenue, law enforcement—who were, with court authorization, already surveilling the residence due to intercepted wire and electronic communications—executed a search warrant obtained on June 5, 2024. (Doc. 232, pp. 3–5); *see, e.g.*, (Doc. 156-3, p. 1). Defendant contends that the search warrant authorizing the search of 3835 Edgar D. Nixon Avenue "including all outbuildings and vehicles located on the property" did not extend to cover his truck because he was a temporary visitor and because law enforcement lacked probable cause to search his vehicle under the automobile exception. (Doc. 249, p. 1); (Doc. 145, p. 1); *see, e.g.*, (Doc. 156-3, p. 1); *see also United States v. Tamari*, 454 F.3d 1259, 1263 (11th Cir. 2006) (holding a search valid "so long as th[e] vehicle[] could reasonably contain items the officers are searching for").

In his Objection, Defendant renews his argument that his "mere presence at the residence did not bring him within the scope of the warrant." (Doc. 249, p. 2 n.1). Defendant argues that "an individual's presence in an area of expected criminal activity, standing alone, is not enough" to establish probable cause. (Doc. 249, p. 4 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000))). However, the testimony and evidence in this case shows that there is much more in play than just a simple "standing alone" inquiry. *Wadlow*, 528 U.S. at 124. Relative to this case, "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Id.* As the Magistrate Judge

2

explained, and as the Court expounds on below, law enforcement had sufficient facts to support a finding of probable cause particularized to Defendant.

Relying on *Ybarra v. Illinois*, Defendant argues that he "enjoys an 'individualized protection [that] was separate and distinct from the Fourth and Fourteenth Amendment protection possessed by the' owner of the property." (Doc. 132, p. 3 (quoting 444 U.S. 85, 91–92 (1968))). Stated differently, he argues that "the fact that 'police possessed a warrant based on probable cause to search' the property where [Defendant] was visiting did not affect [*his*] Fourth Amendment rights." (*Id.* (quoting *Katz v. United States*, 489 U.S. 347, 451 (1967))).

In *Ybarra*, the Supreme Court held that a warrant to search Aurora Tap Tavern did not give law enforcement officials any authority "to invade the constitutional protections possessed individually by the tavern's customers." 444 U.S. at 92. Or, as the Eleventh Circuit puts it, the "search of a person who happened to be at a bar during a search pursuant to a premises warrant was not subject to a lawful search absent 'probable cause particularized with respect to that person.'" *United States v. Young*, 909 F.2d 442, 444–45 (11th Cir. 1990) (quoting *Ybarra*, 444 U.S. at 85). The Supreme Court noted that there was no probable cause to search Ybarra because police officers "did not recognize [him] and had no reason to believe that he had committed, was committing, or was about to commit any offense under state or federal law." *Ybarra*, 444 U.S. at 91. Specifically, the Supreme Court pointed out that "Ybarra made no gestures indicative of criminal conduct, made

3

no movements that might suggest an attempt to conceal contraband, and said nothing of a suspicious nature to the police officers." *Id.* "In short, the [police officers] knew nothing in particular about Ybarra, except that he was present, along with several other customers, in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale." *Id.* However, there are facts in this case that easily distinguish it from *Ybarra*. Most obvious is the fact that Ybarra visited a tavern as a customer, and Defendant visited 3835 Edgar D. Nixon Avenue as a suspected drug courier. *Ybarra*, 444 U.S. at 88; (Doc. 170, p. 2); *see also* n.2, *infra*. While that's the most glaring difference between *Ybarra* and this case, there are other facts demonstrating the requisite relationship to find that Defendant's constitutional rights were not violated.

"[I]n determining whether a search of personal effects violates the scope of a 'premises' warrant, one must consider the relationship between the object, the person[,] and the place being searched." *Young*, 909 F.2d at 444–45 (citing *United States v. Micheli*, 487 F.2d 429, 431 (1st Cir. 1973)). First, there are intercepted communications that caused law enforcement "to believe that someone was going to deliver a shipment of cocaine to [3835 Edgar D. Nixon Avenue] on June 10, 2024."[2] (Doc. 232, pp. 4, 10). Second, there are intercepted communications where a woman requested the address of the residence and was later provided the address along with specific instructions on where to park. (*Id.* at

---

[2] The Magistrate Judge found the testimony of Special Agent Evan Skeldon of the Drug Enforcement Administration to be credible. (Doc. 232, p. 2 n. 3).

4

pp. 4–5, 10). And third, there is the fact that Defendant, shortly after phone calls concerning the Montgomery-based address, arrived at 3835 Edgar D. Nixon Avenue with a female occupant and parked his truck in the yard. (*Id.*). Taken together, there is a demonstrable relationship between Defendant, his truck and its contents, and the place to be searched listed in the warrant issued on June 5, 2024. *Young*, 909 F.2d at 444–45.

*Ybarra* "did not state that the relationship between the person searched, the warrant[,] and the premises are irrelevant in determining whether a search falls outside the permissible scope of the Fourth Amendment." *Id.* at 445. Instead, "it was *the lack* of such a relationship that pointed to a finding of no probable cause in *Ybarra*." *Id.* (emphasis added). Even though Defendant may not have had a direct affiliation to "the place being searched" and even though law enforcement may not have had any knowledge specifically connecting him to the criminal conduct they were investigating regarding Defendant Jim Carter—the resident occupant of 3835 Edgar D. Nixon Avenue—there is not a "lack of such relationship" that would support a finding of no probable cause. *Young*, 909 F.2d at 444–45; (Doc. 145, p. 2). Again, there are specific facts of someone going to a specific house at a specific time. Such a connective relationship coupled with the fact that Defendant—shortly after being provided with details of the house—pulled into the yard of 3835 Edgar D. Nixon Avenue, gave law enforcement "probable cause particularized with respect to [him]." *Young*, 909 F.2d at 445.

Even if law enforcement couldn't search Defendant given his status as a visitor to

5

3835 Edgar D. Nixon Avenue, probable cause still existed to search his truck under the automobile exception. As Defendant argues in his Motion, "search warrants are generally required," but "the automobile exception allows for the warrantless search of an automobile when the '[vehicle] is readily movable[3] and probable cause exists to believe it contains contraband[.]'" (Doc. 132, p. 2 (quoting *Maryland v. Dyson*, 527 U.S. 465, 467 (1999))). This brings the Court to the second point of Defendant's Objection.

Defendant maintains that "law enforcement lacked probable cause to justify the search" of his truck under the automobile exception. (Doc. 249, p. 3). For that exception to apply, probable cause must exist and whether it does will depend on whether there are "objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *United States v. Ross*, 456 U.S. 798, 808 (1982). Good faith is insufficient to reach probable cause—it must be more: "grounded on facts within [the] knowledge of the [officer], which in the judgment of the court[,] would make his faith reasonable." *Id.* (quoting *Carroll v. United States*, 267 U.S. 132, 161–62 (1925)) (second alteration in original). Probable cause "is not a high bar," and it does not require "the same 'standard of conclusiveness and probability as the facts necessary to support a conviction.'" *United States v. Babcock*, 924 F.3d 1180, 1192 (11th Cir. 2019) (quoting *United States v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003)). Rather,

---

[3] Defendant concedes that his truck was readily movable. (Doc. 173, Hearing Tr., p. 63:18–21); *see also* (Doc. 232, p. 9 n.15).

probable cause "requires only 'a substantial chance' that evidence of criminal activity exists. *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)); *see also* (Doc. 232, p. 9); (Doc. 249, p. 3). Where there are "facts within the collective knowledge of law enforcement officials" "to cause a person of reasonable caution to believe that a criminal offense has been or is being committed" probable cause exists. *Babcock*, 924 F.3d at 1192 (quoting *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018)).

Defendant points to the fact that his mode of transportation (his truck) was different from how other suspected drug couriers traveled (by bus from Texas to Alabama) for their dealings with Defendant Carter. This "fundamental difference," Defendant contends, is "at odds" with law enforcement's "collective knowledge" about Defendant Carter's "pattern of conduct" for his operations; and is thus, "at odds" with supporting a finding of probable cause. (Doc. 249, pp. 3–4); (Doc. 232, pp. 2–3). Notwithstanding law enforcement's collective knowledge about other suspected drug couriers, the address to which they all travel, and their means of travel to Alabama, Defendant seemingly hopes the Court will overlook droves of facts that underlie this case. Defendant heavily minimizes the connection of the phone call between Defendant Carter and his son, Defendant Jimario Thompson, discussing an expected drug shipment on June 10, 2024, and other communications made that day concerning 3835 Edgar D. Nixon Avenue. (Doc. 232, pp. 2–4). There is nothing that calls for the level of exactness (truck vs. bus) that Defendant argues must be present to support a finding of probable cause.

7

Again, there need only be a "substantial chance" of evidence of criminal activity. *Babcock*, 924 F.3d at 1192.

To pull a quote from the Magistrate Judge's R&R, "[c]ollectively, the[] circumstances [in this case] gave [law enforcement] probable cause . . . . This common-sense conclusion doesn't depend on any particular fact taken in isolation; rather, as is often the case, the whole is . . . greater than the sum of its parts." (Doc. 232, pp. 10–11 (quoting *Babcock*, 924 F.3d at 1193)). The overarching issue is whether "the collective facts would cause a 'person of reasonable caution' to believe that 'a criminal offense has been or is being committed.'" *Babcock*, 924 F.3d at 1193 (quoting *Khokhar*, 884 F.3d at 1298). On these facts, law enforcement "had probable cause to believe that [Defendant] was guilty of a crime, and that evidence of the crime would be found [i]n his [truck]." *Id.* at 1194. Thus, after a de novo determination of the objected-to portions of the United States Magistrate Judge's Report and Recommendation (Doc. 232), it is due to be **ADOPTED** and **MADE THE ORDER OF THE COURT**. The Court **DENIES** Defendant Francisco Lopez's Motion to Suppress (Doc. 132).

**SO ORDERED** and **ADOPTED**, this 6th day of January, 2025.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**